AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
JAN 1 7 2014
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                  DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                               ) Case No.
Hewlett Packard serial number CNF90225LM at the )
San Diego RCFL                                  ) '14 MJ 0164
                                                )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252 | Possession of child pornography |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Keara Villareal, Deputy United States Marshal
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1-17-14__

_____
Judge's signature

City and state: San Diego, California          William McCurine, Jr., United States Magistrate Judge
                                               *Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Keara Villareal, upon being duly sworn do hereby state that the following is true to my knowledge and belief:

1. I am a Deputy United States Marshal employed by the United States Marshals Service and have been employed for six years. I currently work with the San Diego Fugitive Task Force and am also assigned to the U.S. Marshals office in El Centro, CA. This task force includes members of the San Diego Sheriff's Department, U.S. Marshal's Service, San Diego County Probation, and California Department of Corrections and Rehabilitation. My duties include the investigation of cases involving sex offender registration violations.

2. I make this affidavit in support of an application for a warrant to seize and search one Hewlett Packard ("**Laptop**") serial number CNF90225LM; one black Samsung smart phone ("**Target Telephone**"); one Western Digital hard drive bearing serial number WXE206321126 (**Hard drive**); and one black 16 GB Cruzer Micro thumb drive (**Thumb drive**) as further described in Attachment A, seized on December 19, 2013, from a residence occupied by Enrique Castillo, for evidence, fruits and instrumentalities relating to a violation of Title 18, United States Code, Section 2252.

3. The **Laptop, Target Telephone, Hard drive**, and **Thumb drive** were seized by United States Marshals deputies after they obtained consent from Enrique Castillo to seize and search his laptop, hard drive, thumb drive and cell phone. Enrique Castillo was initially contacted by deputies with United States Marshals Service on December 19, 2013 as they attempted to execute an arrest warrant out of the San Bernardino County on the offense of California Penal Code 288, Lewd and Lascivious Acts with a Minor. The warrant requested the arrest of "Enrique Castillo" with personally identifying information that matched the Castillo contacted on December 19, 2013. On January 10, 2013, the USMS

learned that San Bernardino authorities had identified the wrong "Enrique Castillo" in their warrant and that the Castillo contacted on December 19, 2013 had been released from state custody.

4. Nonetheless, at the time that Castillo was contacted on December 19, 2013, he provided consent for law enforcement to view his electronic media, including his **Laptop, Target Telephone, Hard drive**, and **Thumb drive**. Law enforcement previewed the **Laptop** at Castillo's residence. During that preview, law enforcement viewed images of possible child pornography, and now seek a warrant for authority to search the **Laptop, Target Telephone, Hard drive**, and **Thumb drive** for evidence relating to the possession of child pornography, in violation of 18 U.S.C. § 2252. Probable cause exists to believe that the **Laptop, Target Telephone, Hard drive**, and **Thumb drive** contain evidence relating to violations of Title 18, United States Code Section 2252. The **Laptop, Target Telephone, Hard drive**, and **Thumb drive** are currently in the possession of the San Diego Regional Computer Forensics Lab for storage as evidence.

5. This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 18, United States Code § 2252, described in Attachment B, is located at the item described in Attachment A. Based upon the following information, I believe there is probable cause to believe that currently located within the above-described item at above-described location (See Attachment "A") there is evidence, fruits and instrumentalities of possession of child pornography, in violation of Title 18 U.S.C. § 2252, more particularly described in Attachment B.

## I. **STATEMENT OF PROBABLE CAUSE**

6. On December 19, 2013, deputies with the United States Marshals Service attempted to execute an arrest warrant for an "Enrique Castillo" who had a date of birth, social security number and other personal identifying information matching that of an "Enrique Castillo" wanted out of San Bernardino County. The "Enrique Castillo" identified in the warrant was wanted in connection with allegations of sexual abuse that occurred in 2006, involving 10 and 11 year old girls, in violation of California Penal Code section 288.

7. Deputies arrived at the home of Enrique Castillo in San Diego County. Deputies knocked on the door of his home and announced their presence. Castillo opened the door and was told that he was under arrest pursuant to a warrant out of San Bernardino County. Deputies asked if anyone else was in the home and Castillo responded that no one else was home. He then provided consent after deputies asked if they could conduct a protective sweep for safety and to confirm the absence of additional persons. Deputies entered the home and observed one Hewlett Packard ("**Laptop**") serial number CNF90225LM; one black Samsung smart phone ("**Target Telephone**"); one Western Digital hard drive bearing serial number WXE206321126 ("**Hard drive**"); and one black 16 GB Cruzer Micro thumb drive (**"Thumb drive"**) sitting on the kitchen table.

8. Castillo was permitted to watch deputies as they conducted the sweep. Castillo was returned into the home, and over a cup of coffee, was asked if the property on the kitchen table belonged to him. Castillo admitted that it was his personal belongings. At that time, deputies asked for consent to search his personal belongings. Castillo gave consent to search his laptop, hard drive, telephone and thumb drive. Castillo also provided the password to unlock his **Laptop**.

9. A quick preview of the **Laptop** confirmed the presence of what appeared to be child pornography. The **Laptop** also appeared to contain adult pornography. I was able to locate photographs and videos on Castillo's **Laptop** that appeared to depict a minor engaged in sexually explicit activity. There was one specific female depicted in multiple images, who Castillo stated was his step daughter. There were also videos of this female (step daughter) nude, dancing. Another video of the same female showed her nude, rubbing her vagina. I asked Castillo the age of his step daughter and he stated she had just turned 19. I looked into the properties of the videos, including the video of his step daughter masturbating, and it showed a creation date of 2010, when the female---according to Castillo's statement---would have been underage.

10. At that time, I seized the **Laptop, Target Telephone, Hard drive,** and **Thumb drive** and took them to the San Diego Regional Computer Forensics Lab for storage as evidence further forensic workup.

11. On January 9, 2013, Castillo called the United States Marshals Service, asking for return of his electronic media, effectively revoking consent for law enforcement to continue any analysis of the items.

12. Based upon the above investigation, it is believed that Enrique Castillo has a sexual interest in children, and is a collector of child pornography. As a result of the training and experience of other law enforcement officers in child exploitation and child pornography investigations with whom I have had discussions, there are certain characteristics common to individuals involved in the collection of child pornography:

    a. Individuals who collect and distribute child pornography tend to be sexually attracted to children, their sexual arousal patterns and

erotic imagery focus, in part or in whole, on children. The collection may be exclusively dedicated to children of a particular age, gender, or other set of characteristics, or it may be more diverse, representing a variety of sexual preferences, including children. Child pornography collectors express their attraction to children through the collection of sexually explicit materials involving children as well as other seemingly innocuous material related to children. These individuals may derive sexual gratification from actual physical contact with children as well as from fantasies involving the use of pictures or other visual depictions of children or literature describing sexual contact with children. The overriding motivation for the collection of child pornography and erotica is to define, fuel, and validate the collector's most cherished sexual fantasies involving children. Visual depictions may range from fully clothed children engaged in non-sexual activity to nude children engaged in explicit sexual activity.

b.   Individuals who collect child pornography tend to treat their material as prized possessions and are especially unlikely to part with them. Even if the collector feels threatened by exposure to law enforcement, he will usually seek to preserve his collection by hiding it better, rather than by destroying it. The collection may be culled and refined, but the size of the collection tends to increase over time. This is particularly true since digital storage media have increased in storage capacity as they have decreased in cost.

c. In fact, many collectors protect their collections by creating back-ups, sometimes multiple back-ups, of some or all of the collection. Child pornography, unlike some other kinds of contraband (e.g. drugs), is not "consumed" by the user. The "consumption" of this product results in its proliferation; more copies are generated. If the collector relocates, his collection almost always moves with him. The very nature of computers as a means of collection, transmission, and/or storage lends itself to permanent preservation of the item. This is in part because a user may attempt to "delete" images, but the computer will likely maintain evidence of that deleted image for prolonged periods of time.

d. Individuals who collect child pornography tend to maintain and possess their material in the privacy and security of their homes or some other secure location like their vehicles where it is readily available. The collection may include sexually explicit or suggestive materials involving children, such as photographs, digital images, magazines, narratives, motion pictures, DVDs, CD-ROMs, video tapes, books, slides, drawings, computer images or other visual media.

e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often

maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in child exploitation and child pornography investigations, all the facts and opinions set forth in this affidavit, the fact that Castillo maintained at least some photographs of possible child pornography on his **Laptop**, and the fact that collectors of child pornography maintain collections of child pornography on various media, I believe that information relevant to offenses under 18 U.S.C. §2252, is stored in the **Laptop, Target Telephone, Hard drive**, and **Thumb drive** described herein.

## PRIOR ATTEMPTS TO OBTAIN DATA

14. Aside from the preview of the Laptop conducted on December 19, 2013, there have been no prior attempts to obtain the data.

## GENUINE RISKS OF DESTRUCTION

15. Because the **Laptop, Target Telephone, Hard drive**, and **Thumb drive** is in law enforcement custody, there is no genuine risk of destruction.

## CELL PHONE METHODOLOGY

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephone and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols

directed exclusively to the identification and extraction of data within the scope of this warrant.

18.  Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

### Procedures For Electronically Stored Information on Laptop, Hard Drive and Thumb Drive

19.  With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media, that may contain data subject to seizure pursuant to this warrant:

### Forensic Imaging

a.  A forensic image is an exact physical copy of the hard drive or other media. A forensic image captures all the data on the hard drive or other media without the data being viewed and without changing the data. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant. The Laptop, including any necessary peripheral devices, will be transported offsite for imaging. After verified images have been obtained, the owner of the devices will be notified and the original devices returned within forty-five (45) days of seizure absent further application to this court.

### Identification and Extraction of Relevant Data

b.  After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of

the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are thousands of different hardware items and software programs, and different versions of the same programs, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office or home environment can be different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

    c. Analyzing the contents of a computer or other electronic storage device, even without significant technical challenges, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process for several reasons. The computer may have stored metadata and other information about a relevant electronic record – e.g., who created it, when and how it was created or downloaded or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Keyword searches may also fail to discover relevant electronic records, depending on how the records were created, stored, or used. For example, keywords search text, but many common electronic mail, database, and spreadsheet applications do not store data as searchable text. Instead, the data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs because the printed document is stored as a graphic image. Graphic images, unlike text, are not subject to keyword searches. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created,

modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

    d.  It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users that generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

    e.  Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-

spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

    f.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including hashing tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days of this warrant, absent further application to this court.

    g.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

20. Based on the foregoing, I believe there is probable cause to believe the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, § 2252 and will be found on the at the property to be searched as provided in Attachment A.

*Keara Villareal*, Deputy US Marshal

Subscribed and sworn to before me this 17th day of January, 2014.

*William McCurine*
WILLIAM MCCURINE, JR.
United States Magistrate Judge

# ATTACHMENT A
# DESCRIPTION OF LOCATION TO BE SEARCHED

One Hewlett Packard ("**Laptop**") serial number CNF90225LM

currently in the possession of United States Marshals Service at the San Diego Regional Computer Forensics Lab for storage as evidence.

1

Case 3:14-mj-00164-WMC   Document 1   Filed 01/17/14   Page 16 of 19

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization is sought to search for and seize evidence that relates to the violations of Title 18, United States Code, Section 2252(a)(4) (possession of matters containing images of minors engaged in sexually explicit conduct). This authorization includes the search of physical documents and includes electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and computer media will be conducted in accordance with the "Procedures For Electronically Stored Information" provided in the affidavit submitted in support of this warrant. Items to be seized include the following:

a. All documents, including all temporary and permanent electronic files and records, (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

b. All documents, including all temporary and permanent electronic files and records, (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe obscene material to minors.

c. User-attribution data to include data reflecting who used or controlled the computer or electronic storage device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.

d. Any and all materials or items which are sexually arousing to individuals who are interested in minors, but which are not in and of themselves

obscene or which do not necessarily depict minors involved in sexually explicit conduct. Such material is commonly known as "child erotica" and includes written materials dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, diaries about sexual contact with children, and fantasy writings as well as photographs of children engaged in activities familiar to the individuals interested in minors.

    e    Any record or document that shows the offer to transmit or receive any depictions of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

    f.    Electronically stored communications or messages reflecting computer on-line chat sessions or e-mail messages with any persons regarding the possession, receipt, distribution, production, advertising and/or reproduction of child pornography, as defined in 18 U.S.C. § 2256.

    g.    Any documents, records, programs, or applications that identify the user of the media.

    h.    Information evidencing whereabouts of person(s) associated with the media, including but not limited to, calendars; diaries; correspondence; credit card; or purchase receipts,

    i.    For any computer hard drive or other electronic media found to contain information otherwise called for by this warrant:

        1.    Evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software;

        2.    Evidence of the lack of such malicious software;

        3.    Evidence of the attachment to the computer of other storage devices, disks, CD-ROMs, or similar containers for electronic evidence; and

        4.    Documentation and manuals that may be necessary to access or conduct an examination of the computer.

j. Information relating to the install date of the computer(s) operating system, presence of file-sharing programs (including install date, whether the program was set up for sharing, etc. or other programs for receiving electronic files including child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or the enticement of minors.

k. Any and all usernames, email accounts, or online identities that may have been used obtaining or sharing child pornography, or for communications with individuals sharing an interest in child pornography.

l. For cellular telephone devices, and any storage devices, such as SIM cards or flash memory devices attached to, inserted in or seized with the device, will be analyzed and the following data will be seized only to the extent that it contains or depicts evidence of violations of 18 U.S.C. § 2252(a)(4) (possession of images of children engaged in sexually explicit conduct), including evidence reflecting use, dominion and control of the device:

1. communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

a. tending to indicate efforts to receive, distribute or view images of minors engaged in sexually explicit conduct;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate the presence of images of minors engaged in sexual explicit conduct;

c. tending to identify co-conspirators, criminal associates, or others involved in the advertising, distributing, producing, receiving or possessing of images of minors engaged in sexually explicit conduct;

d. tending to identify travel to or presence at locations that concern the existence of images of minors engaged in sexual explicit conduct;

      e.      tending to identify the user of, or persons with control over or access to, the subject phone;

      f.      tending to place in context, identify the creator or recipient of, or establish the time of creation, receipt or modification of communications, records, or data above.